# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

SAN MIGUEL HOSPITAL CORPORATION,
d/b/a ALTA VISTA REGIONAL HOSPITAL,
*on behalf of itself and all others similarly situated*,

        Plaintiffs,

       v.                                  No. 1:23-cv-00903 KWR/JFR

PUBLIX SUPERMARKET, INC., HENRY SCHEIN, INC.,
WALGREEN CO., WALGREEN EASTERN CO., INC.,
CVS PHARMACY, INC., CVS Rx Services, Inc.,
CVS ORLANDO FL DISTRIBUTION, LLC,
WALMART, INC., *f/k/a Wal-Mart Stores, Inc.,*
ALBERTSONS COMPANIES, INC., ALBERTSONS, LLC,
SAFEWAY, INC., GIANT EAGLE, INC.,
HBC SERVICES COMPANY, KROGER LIMITED
PARTNERSHIP I, KROGER LIMITED PARTNERSHIP II,
THE KROGER CO., HIKMA PHARMACEUTICALS, INC.,
INDIVIOR, INC., ET AL.,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Plaintiff's Motion for Final Class Certification, Appointment of Class Counsel, Final Approval of Settlements, Approval of Plan of Allocation, and Award of Attorney's fees and Expenses **(Doc. 283)** (the "Motion"). The Motion seeks the approval of a global class settlement between various Acute Care Hospitals who brought cases against certain defendants, manufacturers and distributors of opioids. The motion seeks, *inter alia,* final certification of a settlement class, approval of certain settlements on behalf of the class, approval of the settlement allocation plan, and approval of certain fees and expenses.

Plaintiff settled on behalf of the proposed settlement class with the following four groups of Defendants and their affiliates:

- Defendants Teva Pharmaceuticals Industries, Ltd., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis Pharma, Inc., Actavis LLC, Watson Laboratories, Inc. and Anda, Inc., along with other released entities specified in the Teva Defendants Class Action Settlement Agreement (Doc. 276-3) (collectively, "Teva Defendants");

- Defendants Cencora, Inc. ("*Cencora*") (formerly Amerisource Bergen Corporation), Cardinal Health, Inc. ("*Cardinal*"), and McKesson Corporation ("*McKesson*") (collectively, the "Settling Distributors"), along with other released entities identified in the Distributors Settlement Agreement (Doc. 276-1);

- Defendants Allergan Finance, LLC (f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.); Allergan Sales, LLC; and Allergan USA, Inc., along with released entities specified in the Allergan Defendants' Class Action Settlement Agreement (Doc. 276-4) (collectively, "Allergan Defendants"); and

- Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc., including the released entities identified in the Janssen Settlement Agreement (Doc. 276-2) (collectively, "*Janssen*").

(collectively, the "Settling Defendants"). The Court held a hearing on the Motion on March 4, 2025. The motion is unopposed and no class member has filed an objection. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiffs' Motion for Class Certification is well-taken and, therefore, is **GRANTED.** The Court incorporates herein the eight orders or partial judgments entered concurrently herewith.

**BACKGROUND**

This motion seeks approval of a global settlement between various Acute Care Hospitals against certain opioid manufacturers and distributors. Since 2017, acute care hospitals represented by Interim Settlement Class Counsel have been litigating claims similar to those alleged in this suit in various proceedings in state and federal court. In this case, Plaintiffs brought a RICO claim seeking reimbursement from opioid manufacturers or distributors for the costs certain hospitals incurred in treating opioid users.

Plaintiffs seek the certification of a settlement class and the approval of settlements against four groups of Defendants. The settlements combined provide a $651 million common fund for the putative class. The Settlement Class generally consists of certain Acute Care Hospitals, but is more specifically defined as follows:

> (1) All Acute Care Hospitals in the United States that (a) are not owned or operated by a federal, state, county, parish, city, or other municipal government; and (b) treated patients diagnosed with opioid use disorder and/or other opioid related conditions at any time from January 1, 2009, through the date of entry of the Preliminary Approval Order;
>
> (2) all entities listed on Exhibit A to the Settlement Agreement; and
>
> (3) all Plaintiffs in the Other Actions listed on Exhibit B to the Settlement Agreement.
>
> Exhibits A and B to the Settlement Agreement are non-exhaustive lists and do not purport to identify all members of the Class.

> The following are excluded from the Settlement Class:
>
> (1) Any Acute Care Hospital whose Released Claims have been released by any other settlement with Teva Defendants.

*See* Doc. 277 at 3-4. Plaintiffs estimate the class consists of approximately 5,800 hospitals.

This motion seeks the approval of a settlement of claims against the following four groups of Defendants:

- Defendants Teva Pharmaceuticals Industries, Ltd., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis Pharma, Inc., Actavis LLC, Watson Laboratories, Inc. and Anda, Inc., along with other released entities specified in the Teva Defendants Class Action Settlement Agreement (Doc. 276-3) (collectively, "Teva Defendants");

- Defendants Cencora, Inc. ("*Cencora*") (formerly Amerisource Bergen Corporation), Cardinal Health, Inc. ("*Cardinal*"), and McKesson Corporation ("*McKesson*") (collectively, the "Settling Distributors"), along with other released entities identified in the Distributors Settlement Agreement (Doc. 276-1);

- Defendants Allergan Finance, LLC (f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.); Allergan Sales, LLC; and Allergan USA, Inc., along with released entities specified in the Allergan Defendants' Class Action Settlement Agreement (Doc. 276-4) (collectively, "Allergan Defendants"); and

- Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc., including the released entities identified in the Janssen Settlement Agreement (Doc. 276-2) (collectively, "*Janssen*").

Plaintiffs in the following cases, in addition to this one, were appointed as Settlement Class Representatives: *Florida Health Sciences Center, Inc., et al. v. Richard Sackler, et al.*, Case No. 19-018882 (Cir. Ct. Broward Cnty., Fla.); *The DCH Health Care Authority, et al. v. Purdue Pharma, L.P., et al.*, Case No. CV-19-07 (Cir. Ct. Conecuh Cnty., Ala.); *Fort Payne Hospital Corporation, et al. v. McKesson Corporation, et al.*, Case No. 21-cv-2021-900016.00 (Cir. Ct. Conecuh Cnty., Ala.); and *Lester E. Cox Medical Centers d/b/a Cox Medical Centers, et al. v. Amneal Pharmaceuticals, LLC, et al.*, No. 6:22-cv-3192 (W.D. Mo.). *See, e.g.,* Doc. 277 at 4.

Moreover, the Court appointed the following as interim class counsel:

4

John W. Barrett of Barrett Law Group, P.A.; Warren T. Burns of Burns Charest LLP; Robert A. Clifford of Clifford Law Offices, P.C.; Steven B. Farmer of Farmer Cline & Campbell, PLLC; Charles J. LaDuca of Cuneo, Gilbert, & LaDuca, LLP; and Steven A. Martino of Taylor Martino, P.C. Barrett was designated as Lead Counsel

*See,* e.g., Doc. 277 at ¶ 5.

## LEGAL STANDARD

To certify a class under Fed. R. Civ. P. 23, Plaintiffs bear the burden of showing that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Plaintiff must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1) – (3).

The Court must engage in a "rigorous analysis of whether the threshold requirements of Rule 23(a) are satisfied." *Shook v. El Paso County*, 3865 F.3d 963, 968 (10th Cir. 2004); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.,* 725 F.3d 1213, 1218 (10th Cir. 2013). This is not a pleading standard, and Plaintiff must "affirmatively demonstrate" her compliance with the rules. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2551 (2011); *XTO Energy, Inc.,* 725 F.3d at 1218 (plaintiff has "strict burden of proof").  "Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations." *Monreal v. Potter,* 367 F.3d 1224, 1238 (10th Cir.2004) (internal quotation marks omitted), *quoted in Trevizo v. Adams*, 455 F.3d 1155, 1163 (10th Cir. 2006).

## DISCUSSION

Plaintiffs seek, *inter alia*, certification of a settlement class under Fed. R. Civ. P. 23(b)(3), approval of the class settlement under Fed. R. Civ. P. 23(e), approval of the attorneys' fees and costs, and the appointment of settlement class counsel. For the reasons described below, Plaintiff satisfies the requirements of certification under Fed. R. Civ. P. 23(a) and (b)(3). The Court therefore certifies the class for settlement purposes only and appoints counsel only for the settlement class. Moreover, the Court approves the requested fees and expenses.

I.    **No objections were filed and the motion is unopposed.**

Initially, the Court notes that no objections were filed and the motion is therefore unopposed. Certain non-settling defendants filed responses, but these responses were primarily concerned with clarifying that any settlement class certification decision would not apply to them. *See* Pharmacy Defendants' Response, Doc. 289; Schein's Response, Doc. 290. Here, the Court only considers the certification of a *settlement* class involving the Settling Defendants. This decision has no bearing on whether a contested certification of a non-settlement class as to the non-settling defendants would be appropriate.

The settlement agreements and the orders preliminarily approving the settlement provided for a procedure to object to the settlements. Objections were required to be filed by January 6, 2025. *See, e.g.,* Order Preliminarily Approving Settlement, Doc. 277 at ¶ 25-27. Therefore, the Motion is unopposed.

II.    **Plaintiffs have satisfied all requirements of Fed. R. Civ. P. 23(a) for the settlement class.**

Plaintiffs seek to certify a settlement class as follows:

All Acute Care Hospitals in the United States that (i) are not owned or operated by a federal, state, county, parish, city, or other municipal government; and (ii) treated patients diagnosed with opioid use disorder and/or other opioid-related conditions

at any time from January 1, 2009 through the date of entry of the Preliminary
Approval Order.

Mot., Doc. 283-1 at 20, *citing* Distributors Settlement Agreement, Doc. 276-1 at III.A.1. The class

includes all entities listed in Exhibit A and all other plaintiffs listed in Exhibit B to each settlement

agreements. *Id.* Excluded from the classes are any Acute Care Hospitals whose Released Claims

have been released by any other settlement with the Settling Defendants. *Id.*

The Court finds that Plaintiffs have satisfied the requirements of Rule 23(a).

## A.    Numerosity

Fed. R. Civ. P. 23(a)(1) requires that a "class is so numerous that joinder of all members is

impracticable." There is "no set formula to determine if the class is so numerous that it should be

so certified." *Rex v. Owens ex rel. State of Okla.,* 585 F.2d 432, 436 (10th Cir.1978), *quoted in*

*Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). "The numerosity requirement requires

examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co.*

*of the Nw., Inc. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64

L.Ed.2d 319 (1980).

Although Plaintiffs bear the burden of establishing numerosity, they need not establish any

precise number of class members at this stage, or have already identified who is part of the class.

*Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1214–15 (10th Cir.

2014); *Neiberger v. Hawkins*, 208 F.R. D. 301, 313 (D. Colo. 2002) ("the exact number of potential

members need not be shown").

Here, Plaintiffs assert that the class includes over 5,000 acute care hospitals or entities.

Therefore, the Court finds that Plaintiffs have established that a "class is so numerous that joinder

of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

## B.    Commonality

Plaintiffs must also show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 131 S.Ct. at 2551.

"For a common question of law to exist, the putative class must share a discrete legal question of some kind." *J.B. ex rel Hart*, 186 F.3d at 1289. "What matters to class certification ... is ... the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Walmart*, 564 U.S. at 350, 131 S.Ct. at 2551. There must be a "common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. "[E]ven a single common question will do." *Wal–Mart,* 131 S.Ct. at 2556; *see also Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014).

Plaintiffs assert the following common questions:

- Did the Settling Defendants manufacture prescription opioids?

- Did Settling Defendants make misleading statements regarding the risks and benefits of prescription opioids?

- Did Settling Defendants distribute prescription opioids?

- Did Settling Defendants distribute prescription opioids without conducting adequate due diligence?

- What is the scope of Settling Defendants' duties under the Controlled Substances Act?

- Did Settling Defendants receive suspicious orders for prescription opioids?

- Did Settling Defendants fill suspicious orders of prescription opioids?

- Did Settling Defendants report suspicious orders of prescription opioids to DEA and other regulators?

- Did Settling Defendants engage in wire fraud?

- Did Settling Defendants engage in mail fraud?

- Did Settling Defendants corrupt an official proceeding?

First Amended Class Action Complaint, Doc. 144 at ¶ 1167.

An answer to these questions would likely multiple issues which are central to the claim at issue. Therefore, Plaintiffs have established commonality.

## C.    Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). The commonality and typicality requirements tend to merge. *Wal-Mart,* 131 S.Ct. at 2551 n. 5. "The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality. Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010) (internal citations omitted).

Here, the Court finds that Plaintiffs are members of the proposed class and their interests align with the settlement class. Plaintiffs, as well as the proposed class, are acute care hospitals who treated patients diagnosed with opioids use disorder and/or other opioid-related conditions. The relief they seek is based on the same evidence and legal theories as the settlement class.

## D.    Adequacy.

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Resolution of these two questions determines legal adequacy:

(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187 (10th Cir. 2002), *quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs are members of the class and Plaintiffs' interests align with the class interests.

There is nothing in the record to suggest that Plaintiffs or class counsel have any conflict of interest with the class members. Moreover, class counsel and Plaintiffs will clearly vigorously prosecute the action on behalf of the class.  Class counsel are highly experienced in class actions. Burns. Decl. at ¶ 5.

Therefore, the Court finds that Plaintiffs have made an adequate showing under Fed. R. Civ. P. 23(a)(4).

**III.    Plaintiffs have satisfied the requirements under Fed. R. Civ. P. 23(b)(3) as to the settlement class.**

Plaintiffs seek certification of a settlement class under Fed. Civ. R. 23(b)(3). Certification under that subsection is proper if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. Civ. R. 23(b)(3) (emphasis added). The Court finds that certification of the Settlement Class under Fed. R. Civ. P. 23(b)(3) is appropriate.

**A.    Predominance.**

Rule 23(b)(3) requires a "rigorous analysis" into whether common questions predominate over individual ones. *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).   The predominance inquiry is "far more demanding than Rule 23(a)'s

commonality requirement." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013). "Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive. Put differently, the predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (internal citations and quotation marks omitted).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.,* —— U.S. ——, 131 S.Ct. 2179, 2184, 180 L.Ed.2d 24 (2011) (quoting Rule 23). The Court considers "(1) which of those elements are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). "Stated another way, consideration of how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual—will frequently entail some discussion of the claim itself." *Id.*

An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194

L. Ed. 2d 124 (2016).

**B.    Common questions predominate over individual ones.**

The Court finds that certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions common to the class predominate over those that are individualized.

The Court has reviewed the relevant claims and elements, and the record does not reflect that individualized inquiries would predominate over common questions.    Common questions regarding the existence of a RICO conspiracy, Settling Defendants' participation in the conspiracy, and causation predominate over potential individual issues.

**C.    A class action is superior to other available methods of adjudication for this settlement.**

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem,* 521 U.S. at 615 (quoting Fed.R.Civ.P. 23(b)(3)). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617.

The Court may consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The Court finds that a class action under Rule 23(b)(3) is superior to other available methods of adjudication.  The claims asserted in the ACH Opioid Litigation are highly complex and require significant investment of time and capital by the acute care hospitals and their counsel.  Therefore, the class members have little interest individually controlling the prosecution. Fed. R. Civ. P. 23(b)(3)(A).  This is a global settlement involving the settlement of claims brought

by multiple plaintiffs, several of whom have been appointed as class representatives. No class member has objected to the settlement or the class certification or asserted that they wish to continue pursuing their claims outside of the settlement. Fed. R. Civ. P. 23(b)(3)(B). Finally, the difficulties in managing this class action do not appear to be great. Fed. R. Civ. P. 23(b)(3)(D).

## IV.    **Court appoints Interim Settlement Class Counsel as Class Counsel.**

Plaintiffs request that the Court appoint Interim Settlement Class Counsel as Settlement Class Counsel. The Court agrees.

Rule 23(g) of the Federal Rules of Civil Procedure governs the appointment of class counsel. Relevant here, the Rule provides that a court that certifies a class must appoint class counsel. It sets forth various factors the Court must or may consider. Fed. R. Civ. P. 23(g)(1)(A), (B). These factors include: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Here, these factors clearly favor appointment of Interim Settlement Class Counsel as Settlement class counsel. *First*, Interim Settlement Class Counsel identified and investigated the potential claims. They have been involved in Acute Care Hospital litigation against opioid manufacturers, distributors, or pharmacies for up to eight years in federal and state courts. Burns Decl. at ¶ 30.

*Second,* Interim Settlement Class Counsel are highly experienced in handling class actions and other complex litigation. *Third,* Interim Settlement Class Counsel are highly knowledgeable

in the relevant law.  They have spent years pursuing ACH claims against opioid manufacturers and distributors, and are clearly experts in the prosecution of these cases. Finally, they dedicated an enormous amount of time and resources to the prosecution of these cases.

Therefore, the Court will appoint Interim Settlement Class Counsel as Settlement Class Counsel under Fed. R. Civ. P. 23(g)(1).

## V.    Court approves Settlement under Fed. R. Civ. P. 23(e).

Plaintiffs request that the Court approve the four settlement agreements.  The Court finds the settlements proposed in this class action are fair, adequate and reasonable, and therefore approves the settlements.   Under Fed. R. Civ. P. 23(e), a class action settlement is entitled to final approval where it is "fair, reasonable and adequate." *Gottlieb v. Wiles,* 11 F.3d 1004, 1014 (10th Cir.1993), *overruled in part on other grounds, Devlin v. Scardelletti,* 531 U.S. 1 (2002).

Approval of a class action settlement is committed to the sound discretion of the court. *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir.1984). "In exercising its discretion, the trial court must approve the settlement if it is fair and reasonable." *Id.* "It is the responsibility of the proponents of the settlement to provide sufficient evidence to support a conclusion that the settlement is fair, and where the proponents have failed in this regard, the district court may be justified in requiring more evidence, or in declining to approve the settlement." *Gottlieb,* 11 F.3d at 1015. The evidence must be independently analyzed by the court in making its determination, since the court "may not rely solely on the assertions of the proponents of the settlement as to what the evidence shows." *Id.*

Rule 23(e)(2) directs that the Court consider the following in determining whether a settlement is fair, reasonable, and adequate:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). The Court is required to consider these factors.

The Tenth Circuit has also set forth the following factors, which the Court should consider in assessing whether the settlement is fair, reasonable and adequate:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir.2002) (quoting *Gottlieb,* 11 F.3d at 1014); *see also In Re Integra Realty Resources, Inc.,* 354 F.3d 1246, 1266 (10th Cir.2004). These factors mostly overlap with the above Rule 23(e) factors. Additional factors which may be relevant include: (1) the risk of establishing damages at trial; (2) the extent of discovery and the current posture of the case; (3) the range of possible settlement; and (4) the

reaction of class members to the proposed settlement. *In Re New Mexico Nat. Gas Antitrust Litig.,* 607 F.Supp. 1491, 1504 (D.Colo.1984).

In evaluating the fairness of the settlement, courts should not decide the merits of the case or resolve unsettled legal questions. *Carson v. American Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981); *see also New Mexico Natural Gas Antitrust Litig.,* 607 F.Supp. at 1497. This is because the essence of settlement is compromise. *E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (10th Cir.1985). "It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies." *Grady v. De Ville Motor Hotel, Inc.,* 415 F.2d 449, 451 (10th Cir.1969).

Considering these factors, the Court concludes that the four settlements are fair, reasonable, and adequate.

*First*, Class Plaintiffs and Interim Settlement Class Counsel have adequately represented the settlement class. Fed. R. Civ. P. 23(e)(2)(A). Class representatives and interim class counsel have litigated these cases for approximately eight years. Burns Decl. at ¶¶ 6, 42. They have responded to multiple rounds of motions practice, litigated appeals, have produced millions of pages of documents, and have reviewed voluminous discovery and taken depositions. *Id.* at ¶27. They have retained and worked with over a dozen experts. The Settlement Agreements are the product of over two years of negotiations. *Id.* at ¶¶ 9-10. Through this effort, they achieved a $651 million common fund for the class. The class representative and interim class counsel have clearly vigorously represented the interests of the class. Moreover, there is no evidence in the record of any conflict of interest.

*Second*, the proposal was negotiated at arms' length. Fed. R. Civ. P. 23(e)(2)(B). The settlement was the result of multi-year negotiations between interim class counsel and the settling defendants, involving third-party mediators. Counsel was well-prepared for negotiation. Burns.

Decl. at ¶ 29. Moreover, negotiations were conducted with the supervision of mediators Fouad Kurdi and Judge Sidney Schenkier.

*Third*, the settlements are adequate in light of the costs, risks, and delay of trial and appeal. Fed. R. Civ. P. 23(e)(2)(C)(i). Although the court should not address the merits, "it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006). Here, there are clearly serious questions of law and fact which placed the litigation's outcome in doubt. The Defendants deny any liability or wrongdoing and deny that Plaintiffs have suffered any injuries or damages. Plaintiffs assert complex RICO and state law claims, and the outcome is in doubt. *See* Doc. 283-1 at 35 (listing disagreements between the parties).

Given the risks and costs, immediate recovery is more valuable than the possibility of a more favorable outcome after further litigation. The ACH opioid litigation has been pending for nearly eight years. Burns. Decl. at ¶ 31. Absent this global settlement, multiple cases would continue for years, expending additional time, resources, and costs, with an uncertain result. The additional time and costs for these cases would be substantial, and it is unclear whether there would be a better result than this settlement. As Plaintiffs note, there is a risk they may receive significantly less than the settlement or nothing at all. Doc. 283-1 at ¶ 37. Thus, the risks, costs, delay, and uncertainties of further proceedings weighs in favor of approving each of the settlements.

*Fourth*, the method for distributing relief appears to be effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court finds that Class Plaintiffs and Interim Settlement Class Counsel have provided adequate notice under the circumstances. Under the settlement class notice program, the

Plaintiffs provided individual notice by email or mail to all Settlement Class Members who could be identified, which amounted to approximately 5,800 hospitals providing emergency services. AB Data, Ltd also provided targeted notice through relevant media. Finally, a website was created where settlement-related documents are posted.

Moreover, the claims administration process appears to be effective. The plan of allocation is detailed below. In general, class members who wish to participate in a settlement will complete a registration and claims forms. Class members have two options, a (1) "quick pay" amount of $5,000 dollars, or (2) an amount based on a damages formula. The Settlement Administrator will distribute the Net Settlement Funds to authorized claims under the plan of allocation. The plan of allocation was developed in consultation with certain experts, and is consistent with ACH plans of allocations developed in other cases, such as the Purdue Pharma bankruptcy proceeding.

*Fifth,* the relief provided remains adequate when taking into account the proposed award of attorney's fees and costs. Fed. R. Civ. P. 23(e)(2)(C)(iii). Interim Class Counsel seek an award of attorney's fees of one-third of the total settlement funds, plus payment of expenses incurred in connection with the underlying litigation. As explained below, the attorneys' fees request is appropriate and approved. The relief requested remains adequate when taking into account the attorneys' fees and expenses.

*Sixth,* Plaintiffs assert that the settling parties have no additional agreement. Fed. R. Civ. P. 23(e)(2)(C)(iv).

*Seventh,* the Settlement Class Members are treated equitably relative to each other. Fed. R. Civ. P. (e)(2)(D). As explained in the Plan of Allocation, all settlement class members have the opportunity to (1) select a "Quick Pay" option, or (2) participate in a more detailed damages calculation and allocation process utilizing factors detailed in the Plan of Allocation, which in

general appears to attempt to compensate hospitals for the impact of opioids on the population each hospital treated.

The plan of allocation is attached as Exhibit C to the Settlement Agreements. *See, e.g.,* Doc. 276-1, Exhibit C at 66-68 (the "Plan of Allocation"). The plan of allocation involves a model and algorithm to allocate the amounts due. Plan of Allocation at ¶ A. The algorithm is consistent with the ones used in several other cases, including the Purdue Pharma bankruptcy proceeding. Plan of Allocation at ¶ B.

There are two main options. First, a class member may participate in the Quick Pay option and receive $5,000 total over the four settlements. *Id.* at ¶ D. Distribution of this amount will occur within forty-five days of the Effective Date of the approved settlements. Second, a class member may alternatively participate in a more detailed damages calculation using the model, which may result in a payout greater, but not less, than the Quick Pay amount. *Id.* at ¶ E.

The plan of allocation describes the damages calculation under the second option as follows:

> Under the Model, Cherry Bekaert Advisory, LLC shall determine the Allocated Amount distributable to each Qualifying Class Member who has not elected Quick Pay based on: (1) the diagnostic codes associated with operational charges incurred by the Qualifying Class Member in connection with the treatment of OUD patient encounters in (a) the Emergency Department, (b) Inpatient settings, and (c) Outpatient settings; (2) the portion of such charges that were not reimbursed; and (3) the following distribution determination factors and weights:

| Factors | Weighting % |
|---|---|
| MMEs | 10% |
| OUD Rates | 10% |
| Opioid Deaths | 5% |
| Operational Impact | 35% |
| Opioid Patient % | 15% |
| Litigation Participation | 25% |
| **Total** | **100.00%** |

The above factors are defined as follows:

1. Units of morphine milligram equivalents ("MMEs") shipped into the Qualifying Class Member's service area ("Service Area") during the period of January 1, 2006 through December 31, 2014 (the "Measurement Period");

2. Opioid use disorder rates ("OUD Rates") at the state level, prorated for each Qualifying Class Member;

3. Opioid overdose deaths in the Qualifying Class Member's Service Area ("Opioid Deaths");

4. Operational impact calculated using the Qualifying Class Member's opioid diagnoses codes, and charge and reimbursement data ("Operational Impact");

5. The Qualifying Class Member's opioid related patients as a percentage of its total patients ("Opioid Patient %");

6. Participation in active litigation against an Opioid Manufacturer and/or any Settling Defendant ("Litigation Participation") by commencing a civil action in a state or federal court and engaging in the following activities:

(a) Hosting expert visits for the purpose of enabling the experts to engage with hospital personnel on the opioid epidemic at the hospital, and to review hospital policies, procedures, and programs regarding opioids;

(b) Producing claims data to the Settling Defendants;

(c) Actively engaging in discovery by, e.g., responding to interrogatories and requests for production or admissions; supplying hospital financial documents, policies and procedures, custodial emails, and/or dispensing and discharge prescription data in response to requests by Settling Defendants or orders of a court; providing 30(b)(6) and/or fact witness testimony; propounding discovery to Settling Defendants; formally disclosing expert opinions consistent with federal and/or state court rules; or engaging in motion practice before a court and/or a special master; and

(d) Obtaining a court-ordered trial date.

*Id.* at ¶ F (footnotes omitted). Qualifying class members will be paid no more than ninety days following the effective date on a pro rata basis, up to the available amounts in the net settlement funds. *Id.* at ¶ G. Finally, $3 million may be awarded to one class member for the development of "innovative and effective hospital-led abatement programs, " in the sole discretion of the special

master.  *Id.* at ¶ I. The Court finds that the plan of allocation treats class members equitably and is fair, reasonable, and adequate.

*Eighth,* the parties agree that the settlement is fair and reasonable.  In the Tenth Circuit, the Court considers whether the parties believe a settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187 (10th Cir. 2002). Class counsel and the Plaintiffs believe the settlements are fair, adequate, and reasonable and should be approved.  *Id.*  Finally, the Court notes that no party or class member objected to the settlement.  There was only one attempted opt out submission.  *Id.* at 1189 (considering the "extremely small percentage of class members who opted out").

Finally, under Rule 23(e)(1), a court approving a class actions settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Moreover, class notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Here, Plaintiffs (1) mailed 5,732 copies of the court-approved notice packet to potential settlement class members, (2) emailed 1,224 copies (of which 1,201 were successfully delivered") of the Notice Package to potential Settlement class members; (iii) implemented a media plan to publish notice of the Settlement on certain websites, e-newsletters, and email blasts; (4) maintained a  toll-free telephone number; and (5) established and maintained a settlement website, www.acutecarehospitalsettlement.com. The Court finds that this notice procedure constitutes the best notice practicable under the circumstances.

Therefore, considering all relevant factors and the record, the Court concludes that the settlement is fair, reasonable, and adequate, and is approved.

**VI.    The Court approves Plaintiffs' requested attorneys' fees.**

The Court approves Plaintiffs' requested attorneys' fees. Generally, in calculating attorneys' fees in common fund class actions, the Tenth Circuit applies the percentage-of-the-fund method, which awards class counsel a share of the benefit achieved for the class. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 458 (10th Cir. 2017). District courts consider 12 factors - the *Johnson* factors - in determining the appropriate percentage. *Id.*, *citing Gottlieb v. Barry*, 43 F.3d 474, 482 & n.4 (10th Cir. 1994). Those factors include:

> [1] the time and labor required, [2] the novelty and difficulty of the question presented by the case, [3] the skill requisite to perform the legal service properly, [4] the preclusion of other employment by the attorneys due to acceptance of the case, [5] the customary fee, [6] whether the fee is fixed or contingent, [7] any time limitations imposed by the client or the circumstances, [8] the amount involved and the results obtained, [9] the experience, reputation and ability of the attorneys, [10] the "undesirability" of the case, [11] the nature and length of the professional relationship with the client, and [12] awards in similar cases.

*Id.*, *citing Gottlieb*, 43 F.3d at 482 n.4. This method is the preferred method in calculating attorneys' fees in common fund class actions. *Chieftan Royalty Co.,* 888 F.3d at 458-59, *citing Gottlieb*, 43 F.3d at 483 ("In our circuit, following *Brown* [*v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988),] and *Uselton* [*v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849 (10th Cir. 1993) ], either method is permissible in common fund cases; however, *Uselton* implies a preference for the percentage of the fund method."). This approach "has been called a 'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.*

Plaintiffs request attorneys' fees in the amount of 1/3rd of the common fund. An award of one-third of the $651 million total Settlement amounts to $217 million. Counsel billed approximately $137.7 million. This equates to a 1.58 multiplier to their collective lodestar, which falls well within the range deemed acceptable within the Tenth Circuit. This settlement involves the global settlement of several actions or putative class actions asserted by Acute Care Hospitals

asserting claims against opioid manufacturers or distributors. The Court finds this request is supported by the Johnson factors.

**Factor 1.**

The time and labor spent in this case supports the requested fee amount. This settlement is a global settlement of several cases brought by acute care hospitals, and several attorneys from various actions and several plaintiffs from other actions were appointed as interim settlement class counsel and class representatives. Multiple plaintiffs were appointed as settlement class representatives. Over these various cases, Interim Settlement Class Counsel spent over 211,938 hours resulting in over $137.7 million in fees under the lodestar. Burns Decl. at ¶ 44. Counsel billed at $650 per hour. Burns Decl. at ¶ 44. Thus, Plaintiffs represent that the lodestar multiplier– the amount billed compared to the fee request – is approximately 1.58.

Plaintiffs assert that interim class counsel investigated and developed novel factual and legal theories, reviewed millions of pages of documents, took and defended numerous depositions, and more. Burns Decl. at ¶ 27. These hours included time spent on motions practice, including motions to dismiss, discovery disputes, and a summary judgment. *Id.* at ¶ 27. Moreover, time was spent preparing for trial in Alabama. This time does not include the time they will spend through the settlement approval and claims process.

Therefore, this factor weighs in favor of approving the settlement.

**Factor 2**.

The novelty and difficulty of the issues in this case supports the fee award. Counsel asserted RICO claims (and other claims in other cases) on behalf of Acute Care Hospitals against opioid manufacturers and distributors for the unreimbursed costs of treating opioid users. This appears to be a novel legal theory. There is a heightened risk in cases where there is no roadmap and counsel's acceptance of risk supports an award of a substantial fee. *Stop & Shop Supermarket Co.*

*v. SmithKline Beecham Corp.*, 2005 WL 1213926 at *12 (E.D. Pa. May 19, 2005). In this case, there was a risk that Plaintiffs would not be able to establish the elements of their claims, prove damages, or prevail on appeal. This settlement also resolves state law claims, which also raised novel issues of law and were appealed to the supreme courts of various states. This litigation has been difficult and complex, justifying a significant fee.

**Factors 3 and 9.**

Moreover, the skill requisite to perform the legal services properly and the experience and skill of class counsel supports the fee award. Interim Settlement Class Counsel are highly skilled class action litigators, and have many years of experience in class action litigation. This factor weighs in favor of the requested fee award. "The substantial and creative recovery obtained for the Class, short of trial, is just the sort of result the percentage-fee method was designed to reward. The skill and acumen of counsel have produced unprecedented benefits to the class." *Schwartz. v. TXU Corp.,* 2005 WL 3148350 at *31.

**Factor 4.**

The preclusion of employment in other cases also weighs in favor of the requested fee award. The ACH opioid litigation spanned several years and resulted in tens of thousands of hours billed. As noted elsewhere, it included extensive discovery, multiple complaints, and opposing motions to dismiss and responding to motions for summary judgment. It also involved trial preparation in Alabama state court. These cases were time-intensive, resulting in tens of thousands of hours billed, and that time could have been spent on other matters. The scope and time commitment involved in the ACH litigation clearly prevented counsel from pursuing other opportunities.

**Factor 5**.

Counsel's requested fee if one-third of the common fund is a customary fee in class action cases. "[T]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed to the class." *Anderson v. Merit Energy Co.*, No. CIV.07CV00916LTBBNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009).

**Factor 6.**

The fee in this case was contingent upon the outcome of the case. Counsel potentially risked non-payment of tens of millions in fees billed.

**Factor 7.**

This factor does not appear to apply. The time limitations included following federal court scheduling orders and federal rules.

**Factor 8.**

The significant monetary award and results obtained for the Settlement Classes supports the reasonableness of the fee award. Where "the recovery [is] highly contingent and… the efforts of counsel were instrumental in realizing recovery on behalf of the class", the results obtained may be given greater weight." *Brown,* 838 F.2d at 456; *see also In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1193 (10th Cir. 2023) (noting that results and amount obtained may be weighed more heavily).

The result obtained for the Settlement Class avoids future uncertainties and provides a cash recovery totaling $651 million. This amount will be distributed to the Settlement Class, with no funds reverting to Settling Defendants. Burns Decl. at ¶15. Obtaining this result in the face of significant risks in this putative class action greatly supports the reasonableness of the fee award.

The value to the class is substantial. Class members, estimated to be around 5,800, may opt for a quick-pay amount of $5,000, which is the base amount a claimant may receive if eligible for

all four settlements. Alternatively, they may submit claims data regarding their damages suffered, to calculate a pro rata share of the net settlement proceeds.

**Factor 10.**

The undesirability of the case also weighs in favor of the requested fee. Counsel worked this case for many years without payment, and it involves novel and difficult legal issues. Given the significant time and resource commitments, and very significant risk of non-payment, this factor weighs in favor of approving the fee.

**Factor 11.**

The nature and length of the professional relationships factor is generally neutral in class actions. Several interim class counsel have represented the class representatives for several years.

**Factor 12.**

The requested fee is consistent with fees awarded in similar cases. An attorneys' fee award of one-third is within the range of fees awarded in common fund class actions. *See* Doc. 283-1 at 47-48 (collecting cases allowing fee requests in the range of 30-40%). "Customarily, courts in this District award fees in the range of 30% to 40% of any amount recovered." *Anderson Living Tr. v. Energen Res. Corp.*, No. CV 13-909 WJ/CG, 2021 WL 3076910, at *8 (D.N.M. July 21, 2021).

**Conclusion**

Therefore, considering the totality of the circumstances and all relevant factors, the Court concludes that Plaintiffs' requested attorneys' fees are appropriate and reasonable, and the Court approves the award.

**VII.    <u>Court will award Plaintiffs' their requested expenses</u>.**

Plaintiffs request approximately $35,330,637.54 in litigation expenses across the various ACH opioid cases which are included in this global class action settlement. No party or class member has objected to these requested costs and expenses.

Rule 23(h) authorizes courts to reimburse counsel for "non-taxable costs that are authorized by law or *by the parties' agreement*." Fed. R. Civ. P. 23(h) (emphasis added).

"As with attorney fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred . . . in addition to the attorney fee percentage." *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (citation omitted); *see Candelaria v. Health Care Serv. Corp.*, No. 2:17-cv-404-KG-SMV, 2020 WL 6875828 at *4 (D.N.M. 2020) (in addition to awarding the cost of hiring a settlement administrator, court awarded class counsel all "actual out of- pocket litigation expenses and costs incurred in prosecuting th[e] case").

Here, Plaintiffs' requested fees appear to be authorized by the settlement agreements. The settlement agreements expressly authorize Interim Settlement Class Counsel to seek "reimbursement of expenses incurred in connection with prosecuting the Action and the Other Acts brought by the Class Representatives." *See, e.g.,* Distributor Settlement Agreement, Doc. 276-1 at VIII(A). The agreements provide that the expenses shall be paid from the Settlement Funds. *Id.* at VIII(C).

In this global settlement, Interim Settlement Class Counsel incurred $35,330,637.54 in expenses across the ACH litigation. Burn Decl. Doc. 284-1 at ¶ 48. The expenses are itemized in detail in Exhibits B-9 through B-23 of the exhibits to the Motion. *See, e.g.,* Doc. 284-1 at ¶ 50. The parties appear to have agreed to reimbursement of these expenses in the settlement agreements. The expenses include filing fees, expert costs, court reporting service and transcripts, document management, travel, electronic research, photocopying, overnight delivery, phone charges, mediation fees, jury consultant fees, and others. *Id.* at ¶ 49. These costs were incurred on behalf of Plaintiffs and the class by Plaintiffs' counsel on a contingent basis and have not been

27

repaid.  *Id.*  at ¶ 50.  To the extent necessary, the Court's analysis of the *Johnson* factors above also support the award of costs herein.

Moreover, Plaintiffs seek compensation for the costs incurred for implementation of the Class Notice plan, totaling $311,757.66, with $72,569.86 to A.B. Data and $239,187.81 to Cherry Bekaert.  Plaintiffs also requests that the Notice and Claims Administrators and the Escrow Agent be allowed to submit itemized statements of fees and expenses for the Court's approval on a monthly basis.  Similarly, Plaintiffs propose allowing Special Master Hon. Thomas Hogan to submit on a monthly basis an itemized statement of fees and expenses.

The Court approves the costs and fees, and Plaintiffs' proposed procedure for reimbursement of the above administration and special master fees and costs.

**VIII.  Court declines to *sua sponte* allow late opt-out.**

The Court was informed that there was one attempted opt-out submission.  *See* Special Master's opt-Out Report, Doc. 298.  The Special Master stated that he reviewed the Opt Out Report prepared by AB Data. *Id.* at 1. He concluded that no valid and timely opt-out elections were received by the Court Order deadline for any of the Class Settlements.  There was one email submitted after the deadline, which the Special Master concluded was untimely did not comply with the requirements to opt out set forth in the Court's Orders.  *See, e.g.,* Doc. 277 at ¶¶ 25-27.

This class member has not petitioned this court to consider its late opt out. The Special Master noted that the e-mail was sent to the incorrect email address, was not timely submitted, was not submitted individually for each hospital, did not contain the required certifications under penalty of perjury or provide an affidavit or proof of standing as required.  A physical copy of the request for exclusion was also not received by the designated date. Doc. 298-1 at 2.  Because the

28

class member has not petitioned the court to allow its untimely opt-out, it appears there is nothing for the Court to rule on.

Alternatively, only assuming the Court must *sua sponte* address the late opt-out, the Court concludes that the class member seeking to opt-out, doc. 298, has not established good cause or excusable neglect under Fed. R. Civ. P. 6(b)(1)(B). *See, e.g., In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 5369815, at *4 (D. Kan. Nov. 17, 2021) (addressing good cause and excusable neglect for late opt-out).

Federal Rule of Civil Procedure 6(b)(1)(B) provides:

When an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect.

 "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (quotations omitted). The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.

In *Pioneer*, the Supreme Court said courts should determine whether a movant has shown excusable neglect by balancing "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*

"[T]he most important [*Pioneer*] factor" is the third. *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017). "[A]n inadequate explanation for delay may, by itself, be sufficient

to reject a finding of excusable neglect." *Id.*; *see also United States v. Torres*, 372 F.3d 1159, 1162-64 (10th Cir. 2004) (finding no excusable neglect where three lesser factors weighed in movant's favor but reason for delay did not).

Here, the class member who sought to opt out has not attempted to establish good cause or excusable neglect.

## CONCLUSION

Plaintiffs have satisfied the requirements under Fed. R. Civ. P. 23(a) and (b)(3) for class certification. Moreover, the Court approves the settlement and allocation plan, appoints class counsel, and approves the requested attorneys' fees and expenses. This opinion incorporates the eight other orders and partial judgments entered concurrently herewith.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Final Class Certification, Appointment of Class Counsel, Final Approval of Settlements, Approval of Plan of Allocation, and Award of Attorney's fees and Expenses **(Doc. 283)** is hereby **GRANTED.**


_____/S/ KEA W. RIGGS_____
UNITED STATES DISTRICT JUDGE