# **EXHIBIT C**

**HOSPITAL ESCROW AGREEMENT - DISTRIBUTORS**

**September 26, 2024**

# CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated September 26, 2024, is made among (i) John W. ("Don") Barrett of Barrett Law Group, P.A.; Warren T. Burns of Burns Charest LLP; Robert A. Clifford of Clifford Law Offices, P.C.; Steven B. Farmer of Farmer Cline & Campbell, PLLC; Charles J. LaDuca of Cuneo, Gilbert, & LaDuca, LLP; and Steven A. Martino of Taylor Martino, P.C ("Class Counsel"), (ii) Cencora, Inc. ("Cencora"), Cardinal Health, Inc. ("Cardinal"), and McKesson Corporation ("McKesson") (each of the foregoing in this clause (ii) individually, a "Settling Distributor" and, collectively, the "Settling Distributors") and (iii) Pinnacle Bank, a Tennessee bank, as Custodian/Escrow agent ("Custodian/Escrow Agent").

## Recitals

A.    This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to, and subject to the terms of, the Distributor Class Action Settlement Agreement with Acute Care Hospitals (the "Settlement Agreement") dated September 26, 2024 attached hereto as Exhibit B, entered into by Class Counsel on behalf of Plaintiff Class Representatives ("Plaintiffs") and the Settling Distributors, will be paid to settle the class action captioned *San Miguel Hospital Corp., d/b/a Alta Vista Regional Hospital v. Johnson & Johnson, et al.*, Case No. 1:23-cv-00903-KWR-JFR, pending in the United States District Court, District of New Mexico (the "Court").

B.    Pursuant and subject to the terms of the Settlement Agreement, the Settling Distributors have agreed to pay or cause to be paid the total amount of $390,000,000.00 in cash (the "Settlement Amount") to fully, finally, and forever resolve, discharge, and settle the Released Claims as defined in the Settlement Agreement.

C.    The Settlement Amount, together with any interest accrued thereon, is to be deposited into the Custodian/Escrow Account and used to satisfy payments to authorized claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs, in each case, pursuant to the terms of the Settlement Agreement.

D.    The Custodian/Escrow Account is intended to qualify as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 *et seq.* for all U.S. federal and applicable state and local income tax purposes.

E.    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## Agreement

1.    <u>Appointment of Custodian/Escrow Agent</u>. The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof. The Custodian/Escrow Agent shall be the "Escrow Agent" as defined in the Settlement Agreement, this Custodian/Escrow Agreement

shall be the "Escrow Agreement" as such term is defined in the Settlement Agreement, the Settlement Fund shall be the "Settlement Funds" as such term is defined in the Settlement Agreement, and the Custodian/Escrow Account shall be the "Escrow Account" as such term is defined in the Settlement Agreement.

2.    The Custodian/Escrow Account. The Custodian/Escrow Agent shall establish and maintain a Custodian/Escrow account titled as Opioids Settlement Fund (the "Custodian/Escrow Account"). Pursuant to the Settlement Agreement, the Settling Distributors agreed to cause the Settlement Amount to be deposited into the Custodian/Escrow Account as follows: Within thirty (30) days following the entry of the Preliminary Approval Order, the Settling Distributors agreed to pay or cause to be paid the Settlement Amount of three hundred ninety million U.S. Dollars ($390,000,000.00) in full. The Custodian/Escrow Agent shall receive the Settlement Amount into the Custodian/Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein and shall be released by the Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Settlement Agreement.

In no event shall any Settling Distributor have any liability whatsoever, whether to the Custodian/Escrow Agent, Class Counsel, any Class Member (as defined in the Settlement Agreement) or otherwise, with respect to the Settlement Amount or the Settlement Fund once the Settlement Amount is paid in full to the Custodian/Escrow Account in accordance with the Settlement Agreement and receipt of payment is verified by the Custodian/Escrow Agent.

3.    Investment of Settlement Fund. The Custodian/Escrow Agent shall invest the Settlement Amount deposited in the Custodian/Escrow Account in U.S. agency or treasury securities or other interest-bearing instruments backed by the full faith & credit of the U.S. government or fully insured by the U.S. government and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates, in each case, as further provided in this Section 3; *provided*, *however*, that the Custodian/Escrow Agent will not invest in any instruments that a "*qualified settlement fund*," within the meaning of Treas. Reg. § 1.468B-1, *et seq.*, is not permitted to invest in, pursuant to the Treasury regulations, or any modification in Internal Revenue Service ("IRS") guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. Prior to the Effective Date, unless otherwise mutually agreed by the parties, the Custodian/Escrow Agent shall invest the Settlement Fund in compliance with the preceding sentence as follows: (i) except for $5,000,000 covered in clause (ii), upon receipt of the Settlement Amount, exclusively in successive U.S. Treasury bonds or bills, each with a thirty-day maturity and (ii) $5,000,000 held in immediately available funds. Following the Effective Date, unless otherwise mutually agreed by the Custodian/Escrow Agent and Class Counsel, the Custodian/Escrow Agent shall invest the Settlement Fund in compliance with this Section 3. All risks related to the investment of the Settlement Fund shall be borne by the Custodian/Escrow Account, and any losses in the Custodian/Escrow Account shall be borne by the Custodian/Escrow Account and shall not be recoverable from the Settling Distributors. The Settling Distributors shall have no responsibility for, interest in, or liability whatsoever with respect to the investment decisions or the actions of the Custodian/Escrow Agent or any transactions executed by the Custodian/Escrow Agent related to the investment of the Settlement Fund. The Settlement Fund will be at all times invested conservatively in a manner designed to

assure timely availability of funds, protection of principal, and avoidance of concentration risk, and shall be invested only in short-term instruments or accounts. To the extent the investment is not otherwise specified herein, the Settlement Fund shall at all times remain available for distribution in accordance with the terms hereof and the Settlement Agreement.

4.    <u>Custodian/Escrow Funds Subject to Jurisdiction of the Court</u>. All funds held in the Custodian/Escrow Account shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds are distributed pursuant to the terms of the Settlement Agreement and on order(s) of the Court contemplated thereby.

5.    <u>Taxes</u>

(a)    The Custodian/Escrow Account shall be, and shall be treated by the Settling Parties and the Custodian/Escrow Agent as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 (and corresponding or similar provisions of state, local, or foreign law, as applicable), and the Court shall have continuing jurisdiction over the Custodian/Escrow Account, pursuant to Treas. Reg. § 1.468B-1(c)(1), and over the Custodian/Escrow Agent as its administrator. The Custodian/Escrow Agent shall not take any action or tax position inconsistent with such treatment or with Section IV.D of the Settlement Agreement. In addition, the Custodian/Escrow Agent shall timely make such elections as necessary or advisable, and do all things necessary to carry out the provisions of this Section 5, and shall, in any event, make any available "*relation-back election*" (as defined in Treas. Reg. § 1.468B-1(j)(2) (and corresponding or similar elections under state, local, or foreign law, as applicable)), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Custodian/Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. Notwithstanding anything in the Agreement to the contrary, the Custodian/Escrow Agent shall not on behalf of or in connection with the Custodian/Escrow Account request a private letter ruling, technical advice memorandum or any other ruling or guidance from the IRS or any other taxing authority on any matter without consulting with and obtaining the prior written consent of each Settling Distributor.

(b)    For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), and Treas. Reg. § 1.468B-2(k)(3) (and any corresponding or similar provisions of state, local or foreign law, as applicable), the qualified settlement fund "administrator" shall be the Custodian/Escrow Agent. Class Counsel shall cooperate with and cause the Custodian/Escrow Agent to, and the Custodian/Escrow Agent shall, satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2 (and any similar provisions of state, local or foreign law, as applicable), and any other requirements of applicable tax law with respect to the Custodian/Escrow Account, by, for example: (i) obtaining employer identification numbers and providing the same in an IRS Form W-9 to the Settling Distributors; (ii) satisfying any information reporting or withholding requirements imposed with respect to the Custodian/Escrow Account, including with respect to any distributions from the Custodian/Escrow Account; (iii) timely and properly filing or causing to be filed all informational and other tax returns or filings necessary or advisable with respect to the Custodian/Escrow Account (including, without limitation, the returns described in Treas. Reg.

§ 1.468B-2(k)) and paying any taxes reported thereon; (iv) sending copies of all such tax returns and filings to the Settling Distributors; and (v) providing instructions for the release of sufficient funds from the Custodian/Escrow Account to pay all Taxes owed by the Custodian/Escrow Account in accordance with Section IV.D.3 of the Settlement Agreement and Treas. Reg. § 1.468B-2 and any applicable state, local or other tax laws.  Such returns, as well as the relation-back election described in Section 5(a), shall be consistent with the provisions of this Section 5(b) and Section IV.D of the Settlement Agreement and in all events shall reflect that all Taxes as defined in Section 5(c) on the income earned by the Custodian/Escrow Account shall be paid out of the Settlement Fund as provided in Section 5(c).  Each Released Entity shall provide to the administrator and the IRS the statement described in Treas. Reg. § 1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which such Released Entity makes a transfer to the Custodian/Escrow Account.  The Released Entities shall have no responsibility or liability for the Custodian/Escrow Account's tax returns or other filings.

       (c)      The following shall be paid out of the Settlement Fund: (i) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Custodian/Escrow Account, including, without limitation, any taxes or tax detriments that may be imposed upon the Settling Distributors, their counsel, or any Released Entity with respect to any income earned by the Custodian/Escrow Account for any period during which the Custodian/Escrow Account does not qualify as a qualified settlement fund for federal or state income tax purposes (collectively, "*Taxes*"), and (ii) all expenses and costs incurred in connection with the operation and implementation of this Section 5(c), including, without limitation, expenses of tax attorneys and/or accountants (including the Custodian/Escrow Agent) and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section 5(c) (collectively, "*Tax Expenses*").  In all events, neither the Settling Distributors nor any other Released Entity nor their counsel shall have any liability or responsibility for the Taxes described in clause (i) above or the Tax Expenses.  With funds from the Custodian/Escrow Account, the Custodian/Escrow Agent shall indemnify and hold harmless the Settling Distributors and any other Released Entity and their counsel for Taxes described in clause (i) above and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes described in clause (i) above and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Custodian/Escrow Account and shall timely be paid by the Custodian/Escrow Agent out of the Settlement Fund without prior order from the Court.  The Custodian/Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members or Class Counsel, as the case may be, any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)) (and any corresponding or similar provisions of state, local or foreign law, as applicable).  Neither the Settling Distributors nor any Released Entity nor their counsel is responsible therefor, nor shall they have any liability therefor.  Any amounts deducted or withheld by the Custodian/Escrow Agent (or any other withholding agent) with respect to payments made by the Custodian/Escrow Account shall be treated for all purposes as though such amounts had been distributed to the Person in respect of which such deduction or withholding was made.  The Custodian/Escrow Agent agrees to cooperate with the Settling Parties, their tax attorneys, and their accountants to the extent reasonably necessary to carry out the provisions of this Section 5(c) and with respect to any tax claim, dispute, investigation, audit, examination, contest, litigation, or other

proceeding relating to the Settlement Agreement.

(d)    The "taxable year" of the Custodian/Escrow Account shall be the "calendar year" as such terms are defined in Section 441 of the Code. The Custodian/Escrow Account shall use the accrual method of accounting as defined in Section 446(c) of the Code.

6.    <u>Disbursement Instructions</u>

(a)    The Custodian/Escrow Agent shall not disburse the Settlement Fund, except as provided in this Custodian/Escrow Agreement as follows:

i.    Solely to the extent the Custodian/Escrow Agent has previously received a notice from an Authorized Representative (as defined below) of each of the Settling Distributors confirming the occurrence of the Effective Date: upon receipt of a Class Counsel Release Instruction, substantially in the form attached hereto as Exhibit D, RELEASE, with respect to the Settlement Fund, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Class Counsel Release Instruction, disburse all or part of the Settlement Fund in accordance with such Class Counsel Release Instruction. "Class Counsel Release Instruction" means written instruction executed by an Authorized Representative of Class Counsel directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Fund to pay, disburse, reimburse, hold, waive, or satisfy any monetary obligation provided for or recognized under any of the terms of the Settlement Agreement.

ii.    Upon receipt of a Joint Release Instruction, substantially in the form attached hereto as Exhibit D, RELEASE with respect to the Settlement Fund, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Joint Release Instruction, disburse all or part of the Settlement Fund in accordance with such Joint Release Instruction. A "Joint Release Instruction" means the joint written instruction executed by an Authorized Representative of Class Counsel and by an Authorized Representatives of each of the Settling Distributors, directing the Custodian/Escrow Agent to disburse all or a portion of the Settlement Fund.

iii.    Upon receipt of a Termination Release Instruction, substantially in the form of Exhibit D, RELEASE, with respect to the Settlement Fund, the Custodian/Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Termination Release Instruction, disburse all of the Settlement Fund less interest accrued on the Custodian/Escrow Account, any paid, incurred, or due and owing Notice and Administrative Costs, and Taxes or Tax Expenses paid, incurred, or due and owing (the "Termination Refund") in accordance with such Termination Release Instruction. The Custodian/Escrow Agent will act on such Termination

Release Instruction without further inquiry. "Termination Release Instruction" means written instruction executed by  an Authorized Representative of each of the Settling Distributors directing the Custodian/Escrow Agent to disburse  the Termination Refund to the Settling Distributors or their respective designees pursuant to Section VI.B of the Settlement Agreement (including for the reasons set forth in Sections VI.B, VI.C and VI.D of the Settlement Agreement, as applicable.) Any amounts remaining in the Custodian/Escrow Account following the disbursement of the Termination Refund shall be distributed by order of the Court.

iv.        The Custodian/Escrow Agent may disburse up to $5,000,000 to the Notice and Claims Administrator for reasonable Notice and Administrative Costs as approved by the Court.

v.        As directed by order of the Court.

(b)      Disbursements for distribution of the Settlement Fund in the case of Section 6(a)(i) of this Custodian/Escrow Agreement, must be authorized by either (i) an order of the Court, or (ii) the written direction of Class Counsel as follows: The following are the only individuals authorized to sign written instructions for disbursements from the Custodian/Escrow Account: Don Barrett, Warren Burns, Robert Clifford, Steven Martino, and Charles LaDuca ("Authorized Signer"). Withdrawals or wire transfers of less than $1,000,000.00 shall require the signature of one Authorized Signer. Withdrawals or wire transfers of $1,000,000.00 or more shall require the signature of two (2) Authorized Signers from. The written instructions should be evidenced by written RELEASE, substantially in the form attached hereto as Exhibit D.

(c)      Any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of any funds on deposit in the Custodian/Escrow Account under the terms of this Agreement must be in writing substantially in the form attached hereto as Exhibit D, RELEASE, executed by the appropriate Party or Parties (pursuant to Section 6(a) of this Custodian/Escrow Agreement) as evidenced by the signatures of the person or persons set forth on Exhibit A-1, Exhibit A-2, Exhibit A-3 and Exhibit A-4 (the "Authorized Representatives") and delivered to the Custodian/Escrow Agent. In the event funds transfer instructions are given (other than in writing at the time of execution of this Custodian/Escrow Agreement), by telephone or otherwise, the Custodian/Escrow Agent will seek confirmation of such instructions by receipt via email or facsimile of the form attached hereto as Exhibit D prior to the transfer of funds. A callback may also be used to clarify instructions prior to transfer of funds. The Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so  designated. If the Custodian/Escrow Agent is unable to verify the instructions via a callback, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved.  The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by the Custodian/Escrow Agent.  Class Counsel will notify the Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that

the transaction was delayed or erroneously executed as a result of the Custodian/Escrow Agent's error, the Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d)     Except in the case of gross negligence, fraud, willful misconduct or bad faith, Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees (i) to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

7.      Fees. The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit C attached hereto. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund. The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment pursuant to a Joint Release Instruction (or, after the Effective Date, by a Class Counsel Release Instruction). If Custodian/Escrow Agent is asked to provide additional services, a separate agreement and fee schedule will be entered into.

8.      Duties, Liabilities and Rights of Custodian/Escrow Agent. This  Custodian/Escrow Agreement sets forth all of the obligations of the Custodian/Escrow Agent, and  no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a)     The Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by the applicable Authorized Representatives, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the  propriety  or validity of the service thereof. The Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine and may assume that such person has been properly authorized to do so.

(b)     The Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent the Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. The Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the

Custodian/Escrow Account only (i) upon a Joint Release Instruction (or, after the Effective Date, a Class Counsel Release Instruction) or (ii) pursuant to an order of the Court.

      (c)    The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

      (d)    Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

      (e)    The Custodian/Escrow Agent will furnish monthly statements to all other parties that are party hereto setting forth the activity in the Custodian/Escrow Account.

      (f)    Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of Section 3 of this Custodian/Escrow Agreement. The Custodian/Escrow Agent will be indemnified and held harmless by the Settlement Fund against any and all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable and documented out-of-pocket legal fees and expenses of one outside counsel chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission  by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Custodian/Escrow Agreement, except as a result of the Custodian/Escrow Agent's fraud, bad faith, willful misconduct or gross negligence.

      (g)    Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, the Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

      (h)    In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into the Court, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree, to the extent practicable, to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

      9.    <u>Non-Assignability by Custodian/Escrow Agent</u>. The Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of the persons necessary for a Joint Release Instruction.

      10.    <u>Resignation of Custodian/Escrow Agent</u>. Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 60 days prior written notice to the parties to this Custodian/Escrow Agreement. On the effective date of such resignation, the Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account

to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed by written consent of the persons necessary for a Joint Release Instruction (or, after the Effective Date, a Class Counsel Release Instruction) prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

11.    <u>Notices</u>. Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

If to Class Counsel:

> John W. ("Don") Barrett
> BARRETT LAW GROUP, P.A.
> P.O. Box 927
> 404 Court Square North
> Lexington, MS  39095
> donbarrettpa@gmail.com
>
> Warren T. Burns
> BURNS CHAREST LLP
> 900 Jackson Street, Suite 500
> Dallas, TX  75202
> wburns@burnscharest.com
>
> Robert A. Clifford
> CLIFFORD LAW OFFICES, P.C.
> 120 North LaSalle Street
> 36th Floor
> Chicago, IL  60602
> rclifford@cliffordlaw.com
>
> Steven B. Farmer
> FARMER, CLINE & CAMPBELL, PLLC
> 746 Myrtle Road
> Charleston, WV  25314
> sbfarmer@fcclaw.net
>
> Charles J. LaDuca
> CUNEO GILBERT & LADUCA, LLP
> 4725 Wisconsin Avenue
> Suite 200
> Washington, D.C.  20016
> charlesl@cuneolaw.com
>
> Steven A. Martino

- 9 -

TAYLOR MARTINO ROWAN
455 St. Louis Street
Suite 2100
Mobile, AL  36602
SteveMartino@taylormartino.com

If to the Settling Distributors:

Cardinal Health, Inc.
7000 Cardinal Place, Dublin, OH 43017
Attn: Scott Zimmerman, Jeff Cui, Brent Withrow
Scott.zimmerman@cardinalhealth.com; jeffy.cui@cardinalhealth.com;
brent.withrow@cardinalhealth.com

With a copy to:

Elaine P. Golin
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
EPGolin@wlrk.com

Cencora, Inc.
1300 Morris Drive
Chesterbrook, PA 19087
Attn: Christopher Casalenuovo
Christopher.Casalenuovo@cencora.com

With a copy to:

Michael T. Reynolds
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
mreynolds@cravath.com

McKesson Corporation
6555 N State Hwy 161
Irving, TX 75039
Attn:  Claudio Chiorazzi
Claudio.chiorazzi@mckesson.com

With a copy to:

- 10

Brian Hauck
JENNER & BLOCK LLP
525 Market Street, # 2900
San Francisco, CA 94105
bhauck@jenner.com


If to Custodian/Escrow Agent:

Kevin Roddey
PINNACLE BANK
150 3RD Avenue South, Suite 900
Nashville, TN 37201
Kevin.roddey@pnfp.com

With a copy to:

Justin Hayden
PINNACLE BANK
150 3RD Avenue South, Suite 900
Nashville, TN 37201
Justin.hayden@pnfp.com

12.    <u>Patriot Act Warranties</u>.  Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information").  The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

13.    <u>Entire Agreement</u>. This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto.  Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

14.    <u>Governing Law</u>.  This Custodian/Escrow Agreement shall be governed by the law of the State of New Mexico in all respects. Unless expressly waived by Custodian/Escrow Agent, exclusive jurisdiction for the institution and maintenance of any action for judicial relief hereunder shall be in the United States District Court, District of New Mexico, and the parties hereby waive any claim that such court does not have personal jurisdiction over any parties or is an inconvenient forum. EACH PARTY HEREBY EXPRESSLY WAIVES THEIR RIGHT TO A TRIAL BY JURY OF ANY CLAIM ARISING UNDER OR RELATED TO THIS AGREEMENT, WHETHER NOW EXISTING OR HEREAFTER ARISING.,.

- 11

15.    <u>Termination of Custodian/Escrow Account</u>. The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

16.    <u>Miscellaneous Provisions</u>.

(a)    <u>Counterparts</u>. This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement. All signatures of the parties to this Custodian/Escrow Agreement may be transmitted by facsimile or electronic transmission in portable document form (.pdf), and such facsimile or .pdf will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

(b)    <u>Further Cooperation</u>. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may reasonably request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement.

(c)    <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the parties hereto have executed this Custodian/Escrow Agreement as of the date first above written.

PINNACLE BANK, a Tennessee bank as Custodian/Escrow Agent

By: _____

Title: _____

Class Counsel:

BARRETT LAW GROUP, P.A.

By: _____
       John W. ("Don") Barrett


BURNS CHAREST, LLP

By: _____
       Warren T. Burns


CLIFFORD LAW OFFICES, P.C.

By: _____
       Robert A. Clifford

FARMER CLINE & CAMPBELL, PLLC

By: _____
       Steven B. Farmer

CUNEO, GILBERT, & LADUCA, LLP

By: _____
       Charles J. LaDuca

TAYLOR MARTINO, P.C.

By: _____
       Steven A. Martino

Settling Distributors

Cardinal Health, Inc.

By:  _____
     Scott Zimmerman

     Scott Zimmerman
     SVP, Treasurer
     7000 Cardinal Place
     Dublin, OH 43017


Cencora, Inc.

By:  _____
     Michael T. Reynolds

     Michael Reynolds
     CRAVATH, SWAINE & MOORE LLP
     Two Manhattan West
     375 Ninth Avenue
     New York, NY  10001


McKesson Corporation

By:  _____
     Brian Hauck

     Brian Hauck
     JENNER & BLOCK LLP
     525 Market Street, # 2900
     San Francisco, CA 94105

**Exhibit A-1**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to Class Counsel, authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of Class Counsel, all in accordance with the terms of the Custodian/Escrow Agreement.

**Class Counsel**

| | | | |
|---|---|---|---|
| By: | _____ | By: | _____ |
| Name: | John W. ("Don") Barrett | Name: | Steven B. Farmer |
| Law Firm: | Barrett Law Group, P.A | Law Firm: | Farmer Cline & Campbell, PLLC |
| Email: | DonBarrettPA@gmail.com | Email: | SBFarmer@fcclaw.net |
| Phone: | (805) 797-2574 | Phone: | (304) 741-2700 |

| | | | |
|---|---|---|---|
| By: | _____ | By: | _____ |
| Name: | Warren T. Burns | Name: | Charles J. LaDuca |
| Law Firm: | Burns Charest LLP | Law Firm: | Cuneo, Gilbert, & LaDuca, LLP |
| Email: | WBurns@burnscharest.com | Email: | charles@cuneolaw.com |
| Phone: | (214) 930-6645 | Phone: | (202) 489-3738 |

| | | | |
|---|---|---|---|
| By: | _____ | By: | _____ |
| Name: | Robert A. Clifford | Name: | Steven A. Martino |
| Law Firm: | Clifford Law Offices, P.C. | Law Firm: | Taylor Martino, P.C |
| Email: | rac@cliffordlaw.com | Email: | stevemartino@taylormartino.com |
| Phone: | (312) 758-9090 | Phone: | (251) 591-4017 |

**Exhibit A-2**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to Cardinal Health, Inc. (a Settling Distributor), authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of Cardinal Health, Inc. all in accordance with the terms of the Custodian/Escrow Agreement.

**Cardinal Health, Inc.**

By:      _____

Name:      Scott Zimmerman

Title:      SVP, Treasurer

Email:      scott.zimmerman@cardinalhealth.com

Phone:      614-378-7268

By:      _____

Name:      Jeff Cui

Title:      VP, Assistant Treasurer

Email:      jeffy.cui@cardinalhealth.com

Phone:      347-924-0406

By:      _____

Name:      Brent Withrow

Title:      Director, Assistant Treasurer

Email:      brent.withrow@cardinalhealth.com

Phone:      614-757-6977

**Exhibit A-3**

**AUTHORIZED REPRESENTATIVES**

Each of the Authorized Representatives is, with respect to Cencora, Inc. (a Settling Distributor), authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of Cencora, Inc. all in accordance with the terms of the Custodian/Escrow Agreement.

**Cencora, Inc.**

By:      _____

Name:      Mahaveer Jain

Title:      Treasurer

Email:      Mahaveer.Jain@cencora.com


By:      _____

Name:      Bennett Murphy

Title:      SVP IR & Treasury

Email:      Bennett.Murphy@cencora.com

Phone:      (610) 727-3693

**Exhibit A-4**

**AUTHORIZED REPRESENTATIVES**


Each of the Authorized Representatives is, with respect to McKesson Corporation (a Settling Distributor), authorized to issue instructions, confirm funds transfer instructions by callback, and effect changes in Authorized Representatives of McKesson Corporation all in accordance with the terms of the Custodian/Escrow Agreement.


**McKesson Corporation**


By:        _____

Name:     Claudio Chiorazzi

Title:     Vice President, Treasury Operations & Assistant Treasurer

Email:     claudio.chiorazzi@mckesson.com

Phone:    (305) 561-8306



By:        _____

Name:     Jide Falaki

Title:     Senior Vice President & Treasurer

Email:     jide.falaki@mckesson.com

Phone:    (214) 471-9033




By:        _____

Name:     Rob Park

Title:     Senior Vice President & Associate General Counsel

Email:     rob.park@mckesson.com

Phone:    (202) 271-0942

**Exhibit B**

**Settlement Agreement**

**Exhibit C**

**Fees of Custodian/Escrow Agent**

**Acceptance Fee:**                                                          **Waived**

The Acceptance Fee includes the review of the Custodian/Escrow Agreement, acceptance of the role as Custodian/Escrow Agent, establishment of Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                               **Waived**

The Annual Administration Fee includes the performance of administrative duties associated with the Custodian/Escrow Account including daily account management, generation of account statements to appropriate parties, and disbursement of funds in accordance with the Custodian/Escrow Agreement.  Administration Fees are payable annually in advance without proration for partial years.

**Out of Pocket Expenses:**                                                  **Waived**

Out of pocket expenses include postage, courier, overnight mail, wire transfer, and travel fees.

**Exhibit D**

**RELEASE**

1.        The undersigned, as Authorized Representative as identified in Exhibits A-1–A-4 hereby notifies Pinnacle Bank that pursuant to the Custodian/Escrow Agreement between Settling Distributors, Class Counsel and Pinnacle Bank, the undersigned hereby authorizes Pinnacle Bank to release $_____, to _____(payee information including ACH information or name/address where funds should be sent)_____ paid and held in escrow, pursuant to that certain Custodian/Escrow Agreement dated the _____ day of _____, 2024.

2.        This RELEASE is executed for the sole purpose of releasing the amount(s) held in escrow as aforesaid and this RELEASE does not, nor shall it be construed to, release, waive or otherwise affect any obligations of the Custodian/Escrow Agreement or Settlement Agreement.

3.        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on: _____

Name: _____

Title: _____

Signature: _____