**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SAN MIGUEL HOSPITAL CORPORATION
d/b/a ALTA VISTA REGIONAL HOSPITAL, on
behalf of itself and all others similarly situated,

         Plaintiff

v.

JOHNSON & JOHNSON, et al.,

         Defendants

Case No. 1:23-cv-00903-KWR-JFR
The Hon. Judge Kea Riggs

### MITCHELL & SPEIGHTS LLC'S RESPONSE TO SETTLEMENT CLASS COUNSEL'S NOTICE OF ATTORNEYS' FEE DISPUTE AND REQUEST FOR HEARING AND/OR APPOINTMENT OF SPECIAL MASTER

Mitchell & Speights LLC (the "Mitchell Firm")[1] along with, at one point or another, Motley Rice LLC, the Barrett Law Group P.A., Cuneo Gilbert & LaDuca, Taylor Martino, P.C., Abdalla Law, PLLC, and Clifford Law Offices represented Tucson Medical Center ("TMC") in opioid related litigation in Arizona.

Settlement Class Counsel's Notice omits critical context.[2] This Response provides the Court with a more complete picture of the issues so that it may exercise its independent oversight responsibilities under Federal Rule of Civil Procedure 23(h).

---

[1] Mitchell & Speights LLC has been represented to the Court by Settlement Class Counsel as "Mitchell & Mitchell LLC", Doc. No. 284-4, and "Sam C. Mitchell and Associates", Doc. No. 358. While the former presumably occurred due to an inadvertent email, Mitchell & Speights has no idea how Settlement Class Counsel came up with the latter representation.

[2] Doc. No. 358.

1

It is axiomatic that this Court—not Settlement Class Counsel—holds the ultimate authority over the allocation of attorneys' fees.[3] While courts commonly "appoint a committee of plaintiffs' counsel to recommend how to divide up an aggregate fee award," it is the Court's "responsibility to closely scrutinize the attorneys' fee allocation, especially when the attorneys recommending the allocation have a financial interest in the resulting awards."[4]

Settlement Class Counsel is "invariably conflicted in that it is not just allocating money among others but identifying its own share of the aggregate fee award, that is, self-allocating."[5]

"In the most authoritative decision on fee allocation processes, the Fifth Circuit summarized the situation as one requiring 'traditional judicial standards of transparency, impartiality, procedural fairness, and ultimate judicial oversight."[6] The absence of any such process here has produced a result that is neither fair nor transparent.[7]

## Factual Background

TMC was the *first* hospital in the United States to defeat McKesson's federal officer removal argument. TMC was the *first* hospital in the United States to achieve remand from federal court. TMC was the *first* hospital in the United States to defeat motions to dismiss. TMC was the *first* hospital in the United States to engage in discovery. These successes were significantly relied upon by hospitals around the United States, including those in Alabama and Florida. The Mitchell Firm made substantial contributions to these successes, which materially advanced the Acute Care Hospital Opioids

---

[3] Newberg and Rubenstein on Class Actions § 15:23 (6th ed.) (citing *Clearman v. Kochanowski*, 2022 WL 2163781, at *2 (5th Cir. 2022).

[4] *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1207 (10th Cir. 2023) (internal citations and quotations omitted) (*"In re Syngenta"*).

[5] Newberg and Rubenstein on Class Actions § 15:23 (6th ed.) (quoting *In re High Sulfur Content Gasoline Products Liab. Litig.,* 517 F.3d 220, 234 (5th Cir. 2008) ("*In re High Sulfur*")).

[6] *Id.*

[7] *In re E. Palestine Train Derailment,* 160 F.4th 751, 766 (6th Cir. 2025) (Thapar, J. concurring).

Litigation and provided a roadmap that assisted other hospitals in instituting, prosecuting, and resolving their claims.

Settlement Class Counsel publicly recognized the success of TMC and contributions of the Mitchell Firm. On December 20, 2024, by sworn declaration filed with this Court, Settlement Class Counsel reported 11,262.35 hours and $7,320,527.50 for the Mitchell Firm.[8] Relying in part on those representations, the Court approved a class counsel fee of 33.33% (approximately $217 million).[9]

Only later, on May 14, 2025, did Settlement Class Counsel inform the Mitchell Firm that it had purportedly "doomed" TMC's case (and, by extension, the hospitals' claims) and offered a full and final settlement of $1 million—less than one-half of one percent of the total fee award.[10] No rationale was provided for slashing the Mitchell Firm's lodestar by more than 90%.[11] No standards for allocation were shared. No accounting of the fee division was provided.[12] The Mitchell Firm's repeated requests for transparency have gone unanswered.

The Mitchell Firm proposed binding mediation before "prominent national mediator, Fouad Kurdi."[13] Settlement Class Counsel refused.

---

[8] *See* Doc. Nos. 284-1 and 287-4.

[9] Doc No. 314.

[10] Settlement Class Counsel's representations are not unique to the Mitchell Firm. *See In re High Sulfur,* 517 F.3d at 225 (At an *ex parte* hearing "Barrett highlighted two firms whose recommended fee allocations were lower than their requests. He asserted that these firms 'really didn't do anything for the common benefit and caused us trouble and caused the plaintiffs almost killing the settlement. … Barrett did not point out that this situation had been resolved ….").

[11] The Mitchell Firm's lodestar, after the Court awarded 1.58 multiplier, is $ 11,566,433.45.

[12] To be clear, there has been ***no accounting or transparency regarding either common benefit fees or contingency fees.***

[13] Doc. No. 283-1 at p. 10.

## Argument

"Rule 23(h) requires district courts to carefully scrutinize all elements of a fee award … [this] includes the allocation of fees among participating counsel. In other words, deciding what constitutes an appropriate attorneys' fee award may entail determining *who* gets those fees."[14] While the Court may "in its discretion appoint a committee of plaintiffs' counsel to recommend how to divide up an aggregate fee award," it may not "abdicate its responsibility to closely scrutinize the attorneys' fee allocation"[15] to ensure that the divisions are fair, transparent, and reasonable.

This obligation exists precisely because the Court is "the only independent actor with an incentive to get the fee allocation right. Lead counsel of course, is inherently self-interested when allocating the money between firms. So district courts must be careful to *never* allow lead counsel's proposed awards to become final without subjecting them to impartial scrutiny. As Judge Ambro colorfully put it, 'How much deference is due the fox who recommends how to divvy up the chickens?' *In re Diet Drugs Prods. Liab. Litig.,* 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring). Very little. When district courts blindly defer to the lawyers' judgment, they allow the allocation process to become corrupt and unfair."[16]

Settlement Class Counsel's direct financial stake in how the common benefit fund is divided creates a "direct conflict of interest."[17] "Such a direct conflict of interest strongly suggests that affording substantial deference [as Settlement Class Counsel has requested] is inappropriate."[18]

---

[14] *In re E. Palestine Train Derailment*, 160 F.4th at 765 (Thapar, J. Concurring) (internal citations and quotations omitted).
[15] *In re Syngenta,* 61 F.4th at 1207 (internal citation and quotations omitted).
[16] *In re E. Palestine Train Derailment*, 160 F.4th at 766 (internal citation and quotation omitted).
[17] *In re High Sulfur,* 517 F.3d 235
[18] *Id.* internal citation and quotations omitted).

The Mitchell Firm does not oppose a fair, transparent, and expeditious resolution of this dispute. To ensure procedural fairness, transparency, impartiality, and judicial oversight, the Mitchell Firm respectfully requests the Court either:

1) **Appoint a Neutral Third Party.**  Settlement Class Counsel suggests that the Court "appoint Special Master Hon. Thomas L. Hogan (Ret.) to resolve the attorneys' fee dispute between Class Plaintiffs and Sam Mitchell."[19] While the Mitchell Firm does not oppose a binding arbitration or mediation, given Mr. Hogan's significant relationships with Settlement Class Counsel[20], the Mitchell Firm respectfully requests that the Court appoint "national prominent mediator, Fouad Kurdi," to render a binding resolution within sixty (60) days of appointment.

OR

2) **Issue an Order to Show Cause directing Settlement Class Counsel to:**

    a. Produce the following materials (in native format, including metadata) to the Mitchell Firm no later than fourteen (14) business days prior to any scheduled hearing:

        i. Complete time and billing records for all firms that have sought and/or obtained common benefit fees, including the hourly rates for each timekeeper.

        ii. The full methodology and criteria used to calculate and allocate the attorneys' fee award (both common benefit and contingency fees).

        iii. The distribution formula and/or allocation matrix used to determine each participating firm's share of the attorneys' fee award (both common benefit and contingency fees).

---

[19] Doc. No. 358.

[20] *See* Doc. No. 314; *see also In re Mallinckrodt PLC, et al.,* Case No. 20-12522 (JTD), Doc. No. 4147-1 at p. 11 (Bankr. D. Del. Sep. 3, 2021); *In re Endo Pharmaceuticals,* Case No. 22-22549-jlg, Doc. No. 4208 at p. 326 (Bankr. S.D.N.Y. Apr. 23, 2024); *In re Purdue Pharma L.P., et al.,* Case No. 19-23649-shl, Doc. No. 8171 at p. 7 (Bankr. S.D.N.Y. Nov. 3, 2025).

iv. An itemization of all hours excluded from the fee allocation, with the specific reasons for each exclusion and a detailed explanation of any discrepancy between hours reported to the Court in sworn declaration and hours ultimately credited and excluded.

v. Identification of any multipliers applied, the hours to which they were applied, and the basis for the multipliers and their application.

vi. All communications and records of meetings (in any form, electronic or physical) concerning the fee allocation process, including any agreements regarding division of common benefit and/or contingency fees.

b. Appear at a hearing and provide a full explanation regarding:

i. Whether TMC and the Mitchell Firm substantially contributed to the litigation and, if so, the specific factors that justified reducing the Mitchell Firm's compensation from over $10 million in lodestar value to $1 million.

ii. Why the Mitchell Firm's hours and TMC's expenses were included in sworn submissions to the Court if those contributions were later deemed "dooming" to the class.

iii. Whether the drastic reduction imposed on the Mitchell Firm was anomalous or reflective of how other similarly situated counsel were treated.

iv. Any other matters the Court deems necessary to ensure a transparent and fair allocation.

v. At the conclusion of the hearing, that the Court grant all relief it deems just and proper.

Dated: June 3, 2026                                         Respectfully Submitted,


**OGBORN MIHM LLP**

*/S/ David Roth*
David Roth, Esq.
1700 Lincoln Street
Suite 2700
Denver, CO 80203
David.Roth@omtrial.com

**MITCHELL & SPEIGHTS LLC**

Samuel F. Mitchell
(*pro hac vice* forthcoming)
7161 E. Rancho Vista Drive
Suite 5009
Scottsdale, AZ 85251
Sam@mitchellspeights.com